UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
JUN 14 2012
CLERK. US DISTRICT COURT
NEWPORT NEWS VA

| | |
|---|---|
| INMER E. CAMPOS-CARRANZA,<br><br>                Plaintiff,<br>v.<br><br>FEDERAL HOME LOAN MORTGAGE<br>CORPORATION (d/b/a Freddie Mac)<br>SERVE:    Hyacinth Kucik, VP Litigation<br>                8200 Jones Branch Drive<br>                McLean, VA 22102<br><br>GMAC MORTGAGE, LLC,<br>SERVE:    Corporation Service Company,<br>                Registered Agent<br>                1111 East Main Street,<br>                Bank of America Center, 16th Floor<br>                Richmond, VA 23219<br><br>LAW OFFICES OF SHAPIRO BROWN & ALT,<br>LLP F/K/A LAW OFFICES OF SHAPIRO &<br>BURSON, LLP<br>SERVE:    John Burson<br>                Registered Agent<br>                1816 N. VanBuren Street,<br>                Arlington, Va 22213<br><br>PROFESSIONAL FORECLOSURE<br>CORPORATION OF VIRGINIA,<br>SERVE:    Edward Farnsworth, Jr.<br>                Registered Agent<br>                236 Clearfield Ave, Suite 215<br>                Virginia Beach, VA 23462<br><br>HELMAND INVESTMENT, LLC<br>SERVE:    Sharif Shafik<br>                Registered Agent<br>                511 N. Lombardy Street<br>                Arlington, VA 22203<br>                          Defendants. | Civil Action No. 4:12-cv-94 |

## COMPLAINT

The Plaintiff, INMER E. CAMPOS-CARRANZA ("Plaintiff"), by counsel, moves for judgment against the Defendants and states as follows:

1. This action arises from the damages caused by Defendants' unlawful attempts to collect a delinquent home mortgage debt allegedly owed by Plaintiff in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the wrongful foreclosure that eventually occurred. Defendants wrongfully foreclosed on Plaintiff's home without complying with all the conditions precedent to foreclosure under Plaintiff's Deed of Trust and through its refusal to accept Plaintiff's payment as requested in its default notice. Defendants also conducted the foreclosure even though Plaintiff was improperly denied for loan modification.

## JURISDICTION

2. Federal question jurisdiction is proper pursuant to 28 U.S.C. § 1331.

3. This court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

## PARTIES

4. Plaintiff, INMER E. CAMPOS-CARRANZA ("Plaintiff"), is a natural person and a resident of the Commonwealth of Virginia.

5. Defendant GMAC MORTGAGE, LLC ("GMAC") is a foreign limited liability doing business as a mortgage originator and servicer. At all relevant times hereto, GMAC was the servicer of Plaintiff's mortgage loan.

6. Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie Mac") is a federally chartered corporation headquartered in McLean and authorized to do business in Virginia. It engages in the business of purchasing and pooling residential mortgage

loans that have been originated according to its specification. At all relevant times hereto, Freddie Mac was the owner of Plaintiff's mortgage loan.

7. Defendant LAW OFFICES OF SHAPIRO BROWN & ALT, LLP ("Shapiro Brown & Alt") is a professional foreclosure law firm located in Virginia, the principal purpose of its business is the collection of debts. Freddie Mac has designated it as a law firm that can be used to foreclose on their home loans secured by property located in Virginia. Shapiro Brown & Alt was formally known as the Law Offices of Shapiro & Burson, LLP.

8. Defendant PROFESSIONAL FORECLOSURE CORPORATION OF VIRGINIA ("Professional Foreclosure Corporation") is a company whose sole purpose is to serve as the substitute trustee for mortgage loans that are referred to Shapiro, Brown & Alt, for the purpose of collecting delinquent debts and/or conducting foreclosure sales for which it purports to be a substitute trustee. Its principal place of business is located at 236 Clearfield Avenue, Suite 215, Virginia Beach, Virginia 23462. At all times relevant to this case, Professional Foreclosure Company of Virginia was operating as an alternate voice and alter ego of Shapiro. For all purposes herein they were one and the same

9. Defendant HELMAND INVESTMENT, LLC ("Helmand") is a Virginia limited liability company headquartered in Fairfax, Virginia. Defendant Helmand purports to have purchased Plaintiff's property at the foreclosure sale that was wrongfully commenced on March 20, 2012.

## STATEMENT OF FACTS

10. On or around September 14, 2005, Plaintiff purchased his home located at 3207 Berkley Lane, Woodbridge, Virginia 22193 ("Property").

11. On May 9, 2007, Plaintiff refinanced his home loan. As a result of the refinance of the Property, Plaintiff owed a principal sum of $237,000.00, evidenced by a note (the "Note"). A copy of the Note is attached hereto as EXHIBIT 1.

12. The Note is secured by a Deed of Trust on the Property dated May 9, 2007, and recorded in the Circuit Court Clerk's Office. A copy of the Deed of Trust is attached hereto as EXHIBIT 2.

13. Plaintiff's Note and Deed of Trust obligated him to repay Reliance Lending, Inc.

14. Freddie Mac purchased Plaintiff's loan subsequent to its origination. As provided by the Deed of Trust, Freddie Mac provided no documentation of the sale to Plaintiff.

15. After the sale of Plaintiff's loan to Freddie Mac, GMAC was given the responsibility of performing certain functions (commonly known in the mortgage industry as "servicing") related to Plaintiff's loan in accordance with its contract with Freddie Mac. Among its responsibilities as the servicer, GMAC was responsible for collecting payments from Plaintiff, communicating with Plaintiff regarding loss mitigation alternatives, and responding to any default by Plaintiff, including by hiring and managing foreclosure counsel. The servicing responsibilities were governed by Freddie Mac's Single Family Seller/Servicer Guide (the "Guide").

16. The contract obligated GMAC to follow Freddie Mac's instructions for servicing the loan, particularly the instructions detailed in the Guide. This contract, and the direction it imposed on GMAC, had the effect of making GMAC an agent of Freddie Mac to perform servicing functions.

17. The Guide gave GMAC, on behalf of Freddie Mac, the authority to commence foreclosure on Plaintiff's home in case of his default on his obligations under the Note and Deed of Trust.

18. The Guide and other instructions from Freddie Mac detailed when GMAC was to commence proceedings and how they were to supervise foreclosure counsel. The Guide further provided instructions to Professional Foreclosure Corporation and Shapiro, Brown & Alt on its requirements prior to commencing a foreclosure sale.

19. Congress passed the Emergency Economic Stabilization Act of 2008 on October 3, 2008, and amended it with the American Recovery and Reinvestment Act of 2009 on February 17, 2009 (collectively referred to as the "Act"). 12 USCS § 5201 *et seq*. On February 18, 2009, pursuant to their authority under the Act, the Treasury Secretary and the Director of the Federal Housing Finance Agency announced the Making Home Affordable Program.

20. The Making Home Affordable program consists of two subprograms. The first subprogram relates to the creation of refinancing products for individuals with minimal or negative equity in their home, and is now known as the Home Affordable Refinance Program ("HARP").

21. The second sub-program relates to the creation and implementation of a uniform loan modification protocol, and is now known as the Home Affordable Modification Program ("HAMP").

22. HAMP is funded by the federal government.

23. Under HAMP, the federal government incentivizes participating servicers to enter into agreements with struggling homeowners that will make adjustments to existing mortgage obligations in order to make the monthly payments more affordable.

5

24. Should a servicer elect to participate in HAMP, they execute a Servicer Participation Agreement ("SPA") with the federal government.

25. On April 13, 2009, the president of GMAC, Anthony Renzi, executed an SPA, thereby making GMAC a participating servicer in HAMP.

26. The SPA executed by GMAC incorporates all "guidelines," "procedures," and "supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications" issued by the Treasury, Fannie Mae or Freddie Mac in connection with the duties of participating servicers. This includes Freddie Mac's Guide and any subsequent bulletins or updates.

### *Plaintiff Experiences Financial Hardship*

27. Plaintiff made his monthly payments in accordance with the Note and Deed of Trust until he began to suffer significant hardship due to a medical emergency that required his wife to undergo immediate surgery.

28. The surgery required Plaintiff's wife, Rosalbina M. Campos ("Ms. Campos"), to unexpectedly miss approximately three months of work. Ms. Campos is a non-salaried employee at a hotel where she works as a cleaner; therefore, she did not receive any compensation while undergoing her medical treatment.

29. The loss of Ms. Campos's income for three months and the costs associated with her treatment placed an extreme financial burden on the couple.

30. Plaintiff made efforts to enter into repayment plans and cure any arrearages, but his requests were denied by GMAC.

31. In September 2011, Plaintiff was behind on his mortgage payment as a result of his financial struggles created by his wife's medical condition.

32. On or around October 12, 2011, GMAC sent Plaintiff a notice of default. This notice demanded payment in the amount of $2,210.76. This sum included his September 2011 payment and October 2011 payment. In addition, GMAC also sought payment in the amount of $311.46 for "fees, costs, and other accrued to date." A copy of the correspondence dated October 12, 2011, is attached hereto as EXHIBIT 3.

33. Pursuant to Paragraph 6 of the Note, GMAC was allowed to send Plaintiff written notice of default "telling [him] that if [he] does not pay *the overdue amount* by a certain date, the Note Holder may require [him] to pay immediately the full amount of Principal which has not been paid and all the interest that [he] owes on that amount." *See* Exhibit 1 ¶ 6(C) (emphasis added).

34. Paragraph 6 further provides "*[i]f the Note Holder has required me to pay immediately* in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law." Id. at ¶ 6(E). Thus, GMAC's cannot assess any costs or expenses until after the Plaintiff fails to comply with the notice of default.

35. GMAC also improperly calculated the late fees that it could charge pursuant to Paragraph 6(A) of the Note, which states that Plaintiff would be charged 5.000% on overdue payments of principal and interest – "but only once on each late payment." *Id.* at ¶ 6(A).

36. Because of this, the notice of default does not state the actual amount that Plaintiff needed to pay to avoid acceleration.

37. Prior to even receiving the default notice, Plaintiff paid GMAC $1,621.82 on or around October 12, 2011. Thus, even assuming GMAC's notice of default provided the correct

amount of overdue charges that it was entitled to collect, Plaintiff was only in arrears by $588.94 pursuant to the notice of default dated October 12, 2011.

38. In early November 2011, Plaintiff contacted GMAC to pay the $588.94 balance plus his November 2011 mortgage payment. However, GMAC refused to accept any payments tendered by Plaintiff. Instead, GMAC told Plaintiff that he was required to pay approximately $3,000.00 to cure the default, which included his payments for November 2011 and additional costs which were not provided for in the Note.

### *Plaintiff's Efforts to Keep His Home*

39. After GMAC refused to accept Plaintiff's payments to cure his default, Plaintiff contact GMAC in January 2012 regarding loss mitigation alternatives, including HAMP.

40. On January 30, 2012, Plaintiff submitted complete application for a loan modification under HAMP.

41. As part of the application package, Plaintiff signed under the penalty of perjury a document entitled "Acknowledgment and Agreement."

42. This agreement provided that Plaintiff understood that "the Servicer will not refer the account to foreclosure or conduct the foreclosure sale if already referred, while it is being reviewed for the Making Home Affordable program unless required by your investor."

43. This Agreement is consistent with the servicing guidelines for HAMP, which bind GMAC as a result of its SPA.

44. These guidelines include the following requirement:

> "[a] servicer may not refer any loan to foreclosure or conduct a schedule foreclosure sale unless and until at least one of the following circumstances exists... the borrower is evaluated for HAMP and is determined to be ineligible for the program...."

45. Nevertheless, on or around February 27, 2012, Shapiro Brown & Alt sent Plaintiff a foreclosure notice indicating that his home would be foreclosed on March 20, 2012.

46. Plaintiff received this notice while he was still under review for his HAMP modification.

47. In correspondence dated March 14, 2012, which Plaintiff did not receive until after the foreclosure sale, GMAC indicated it could not offer Plaintiff a loan modification because it "service[s] [his] loan on behalf of an investor or group of investors that has not given [GMAC] authority to modify [his] loan."

48. This was a false statement as Freddie Mac was his investor and has expressly provided GMAC authority to modify its mortgages.

49. Defendants foreclosed on Plaintiff's home on March 20, 2012.

***Shapiro Brown & Alt and Professional Foreclosure Corporation's Fiduciary Duties***

50. Shapiro Brown & Alt is a law firm whose practice is focused on the collection of debts.

51. In this capacity, Shapiro Brown & Alt regularly collects home loan debts.

52. Shapiro Brown & Alt regularly demand payments from consumers of alleged arrearages and provide to consumers reinstatement quotes and itemizations of amounts that Defendants are attempting to collect.

53. Shapiro Brown & Alt regularly indicates in its correspondence to consumers that "this is an attempt to collect a debt and any information obtained will be used for that purpose," and details specific amounts of money to be paid and regularly accepts payment for their lender claims.

54. Shapiro Brown & Alt and Professional Foreclosure Corporation are fiduciaries to both the creditor and the homeowner.

55. Shapiro Brown & Alt and Professional Foreclosure Corporation are also designated counsel for loans owned by Freddie Mac. *See* http://www.freddiemac.com/service/msp/exh79_va.html (last visited June 12, 2012).

56. All Freddie Mac designated counsel must have the original note, copies of the deed of trust and copies of breach /acceleration demand letter(s) within 2 days of the referral. *Id.*

57. On January 23, 2012, Shapiro Brown & Alt sent Plaintiff a dunning letter that stated it was instructed to initiate legal action based upon the alleged default under the terms of the loan agreement.

58. No later than January 25, 2012, Shapiro Brown & Alt and Professional Foreclosure Corporation should have had the Plaintiff's deed of trust, note and notice of intent to accelerate in its possession.

59. Under the Guide, Shapiro Brown & Alt and Professional Foreclosure Corporation have to request a copy of the original note from Freddie Mac's document custodian.

60. A review of these documents would indicate that 1) the Notice of Intent to Accelerate is inaccurate and the condition precedent to foreclosure has not been met and 2) that Freddie Mac is the investor, noteholder, and beneficiary of this deed of trust.

61. In addition, under the Freddie Mac Bulletin 2011-11, "Servicer must send a written certification to the attorney/trustee **at least seven, but no more than 15 days prior to a foreclosure sale date**" that there is no payment arrangement or pending alternative to foreclosure offer. (emphasis in original).

62. Upon information and belief, Shapiro Brown & Alt and Professional Foreclosure Corporation of Virginia were aware of this requirement for loans owned by Freddie Mac but did not receive any certification from GMAC as the Plaintiff was still under review for HAMP seven days prior to the foreclosure sale.

### *Shapiro Brown & Alt's Violations of the FDCPA*

63. The January 23, 2012, correspondence included the following information was being provided to Plaintiff as required by the Federal Fair Debt Collection Practices Act:

> "(1) [a]s of January 23, 2012, the creditor has advised that the amount of the debt is $243,947.72.
>
> (2) [t]he creditor to whom the debt is owed is <u>GMAC MORTGAGE, LLC.</u>
>
> (5) [t]he Fair Debt Collection Practices Act does not require that we wait until thirty (30) days from the date you receive this notice before we initiate foreclosure proceedings to foreclosure on the subject loan. In the event we do initiate foreclosure proceedings to foreclose on the subject loan, within thirty (30) days from the date you receive this notice, you still retain the right to dispute the debt, or any portion thereof, and you also retain the right to request the name of the original creditor if the original creditor is different from the current creditor, <u>GMAC Mortgage, LLC</u>"

64. The correspondence dated January 23, 2012, further indicated that "GMAC Mortgage, LLC has referred your loan to us for foreclosure."

65. Plaintiff did not owe that amount at on January 23, 2012.

66. In addition, the creditor to whom the debt was owed was Freddie Mac, not GMAC.

67. Shapiro Brown & Alt knew or should have known that this and each of the foregoing misrepresentations that it made were false.

11

68. Shapiro Brown & Alt forwarded correspondence dated February 27, 2012 to Plainitff notifying him that a foreclosure sale is scheduled for his property for March 20, 2012.

69. This correspondence included a Substitution of Trustees Deed dated October 25, 2011.

70. The Appointment Substitution of Trustees Deed stated that GMAC Mortgage, LLC, is the Noteholder.

### Count I: Violation of the FDCPA, 15 U.S.C. § 1692g
(Defendant Shapiro Brown & Alt)

71. The foregoing allegations of the Complaint are incorporated by reference.

72. By failing to disclose the amount of the actual amount of the debt and the identity of the creditor in their January 23, 2012 correspondence, Defendant violated 15 U.S.C. § 1692g(a)(1) and 1692g(a)(2).

73. As a result, Plaintiff is entitled to recover statutory damages, actual damages, reasonable attorneys' fees, and costs against Defendant pursuant to 15 U.S.C. § 1692k.

### Count II: Violation of the FDCPA, 15 U.S.C. § 1692e
(Defendant Shapiro Brown & Alt)

74. The foregoing allegations of the Complaint are incorporated by reference.

75. By falsely stating the identity of the creditor to whom the debt was owed and the amount of the debt, Defendant violated 15 U.S.C. § 1692e(2), e(5), and/or e(10).

76. As a result, Plaintiff is entitled to recover statutory damages, actual damages, reasonable attorneys' fees, and costs against Defendant pursuant to 15 U.S.C. § 1692k.

### Count III: Violation of the FDCPA, 15 U.S.C. § 1692f
(Defendant Shapiro Brown & Alt)

77. The foregoing allegations of the Complaint are incorporated by reference.

78. The sending of notices indicating they were initiating foreclosure proceedings was a nonjudicial action that sought to permanently deprive Plaintiff of his ownership rights in his home.

79. Upon information and belief GMAC had no authority to appoint the Defendants as a substitute trustee because they were not the actual beneficiary of the deed of trust and/or Noteholder.

80. Because they were not validly appointed as a substitute trustee by the noteholder in compliance with the terms of the Note and Deed of Trust, the Defendants had no right to conduct the foreclosure sale, or to transfer the property.

81. In addition, because the loan was never accelerated pursuant to the Deed of Trust, the Defendants could not conduct a foreclosure sale.

82. Defendants threatened and took nonjudicial action to effect dispossession or disablement of the subject property at a time when they had and there was no present right to possession of the property claimed as collateral through an enforceable security interest, in violation of 15 U.S.C. § 1692f(6).

83. As a result, Plaintiff is entitled to recover statutory damages, actual damages, reasonable attorneys' fees, and costs against Defendant pursuant to 15 U.S.C. § 1692k.

### Count IV: Breach of Contract
### (Defendants Freddie Mac and GMAC)

84. The foregoing allegations of the Complaint are incorporated by reference.

85. At all times relevant to this Complaint, GMAC has actual and/or apparent authority to serve as Freddie Mac's agent for purposes of servicing Plaintiff's loan and modifying the Note and Deed of Trust.

86. As a precondition to foreclosure under the terms of the Deed of Trust, Freddie Mac was required to give Plaintiff notice specifying, among other things, the default and the action required to cure the default.

87. Freddie Mac and GMAC breached the Note and Deed of Trust because they did not satisfy the preconditions to foreclosure by providing a notice of default informing Plaintiff of the proper amount that needed to be paid to cure the default.

88. Instead, Freddie Mac and GMAC improperly required Plaintiff to pay costs and expenses in order to avoid preacceleration of his Note.

89. Despite the improper calculations, Plaintiff was willing and able to pay the amount provided in the October 12, 2011 correspondence.

90. Nevertheless, GMAC refused to accept Plaintiff's payments in the beginning of November 2011. Instead, GMAC refused to accept payment unless Plaintiff tendered approximately $3,000.

91. Freddie Mac and GMAC were not entitled to collect $3,000 pursuant to the Deed of Trust and/or the October 12, 2011 correspondence.

92. GMAC's refusal to accept payment breached the Deed of Trust.

93. Moreover, GMAC breached the Deed of Trust by demanding payments for sums that it was not entitled to collect.

94. As a result, Freddie Mac and GMAC did not fulfill the conditions precedent to foreclosure; therefore, did not have the power to foreclose on Plaintiff's home in March 2012.

95. Freddie Mac and GMAC's breaches of the Note and Deed of Trust have caused Plaintiff to suffer economic damages for which there is no adequate remedy at law, and for which Freddie Mac and GMAC should be held liable.

96. Such damages amount to sums in excess of $250,000.00 in the aggregate and include losses relating to the loss of his home, the degradation of his credit and the imposition of fees related to the foreclosure sale and eviction proceedings when Plaintiff was not in default.

97. In addition and in the alternative, the Note and Deed of Trust were all valid and fair contracts requiring mutuality of obligation and performance. Plaintiff's property is unique and has served as his home for over seven years. Thus, his home cannot be adequately substituted with money recoverable only as legal damages.

98. As a result, Plaintiff requests that the Court enter a decree ordering Defendant Freddie Mac to specifically perform the terms of the contract; that the Plaintiff be awarded judgment for his costs incurred in this matter; and that the Court award the Plaintiff such other relief as may seem appropriate to the Court.

99. Alternatively, the Plaintiff requests that judgment be entered in his favor against the Defendant Freddie Mac and GMAC for breach of contract in the amount of the value of their home as determined by the Court, plus interest and costs and other legal and equitable relief that the Court deems appropriate.

### Count V: Breach of Implied Covenant of Good Faith and Fair Dealing
### (Defendants Freddie Mac and GMAC)

100. The foregoing allegations of the Complaint are incorporated by reference.

101. The Note and the Deed of Trust contain an implied covenant obligating Freddie Mac and GMAC to treat Plaintiff with good faith and fair dealing.

102. Freddie Mac and GMAC failed to treat Plaintiff with good faith and fair dealing by, among other things, improperly demanding payment for fees and other charges in its notice of default dated October 12, 2011, refusing to accept Plaintiff's payment in November 2011 unless he paid such charges in addition to other unaccounted for expenses, inviting and

encouraging him to participate in HAMP and then denying him on an illegitimate basis, by failing to postpone the foreclosure sale while Plaintiff was being evaluated for HAMP, and by referring his home to foreclosure without satisfying the conditions precedent to foreclosure.

103. Such conduct constitutes a breach of the duty to act in good faith and deal fairly with Plaintiff under the terms of the Note and Deed of Trust.

104. Because of their breaches of the implied covenant of good faith and fair dealing, Freddie Mac and GMAC are not entitled to exercise its remedy of foreclosure under the Deed of Trust.

105. Plaintiff also suffered actual damages and is threatened with additional harm from the breaches of the covenant of good faith and fair dealing. By relying on Freddie Mac and GMAC's representations, Plaintiff lost other remedies that might have been pursued to save his home, such as entering into a repayment plan, borrowing from family and friends, restricting his debt under the bankruptcy code, or pursuing other strategies to avoid default, such as selling his home.

106. To the extent that actual damages will not fully and fairly compensate Plaintiff, he is also entitled to specific performance and other appropriate injunctive relief.

107. Plaintiff requests actual damages, reinstatement of his mortgage, rescission of the foreclosure sale and specific performance of his Deed of Trust.

### Count VI: Breach of Fiduciary Duty
(Defendants Shapiro Brown & Alt and Professional Foreclosure Corporation)

108. The foregoing allegations in the Complaint are herein incorporated by reference.

109. Professional Foreclosure Corporation was the substitute trustee to the Deed of Trust granted by Plaintiff.

110. At all relevant times, Shapiro Brown & Alt was the agent, attorney, and fiduciary for Professional Foreclosure Corporation in its capacity as the substitute trustee for Plaintiff's Deed of Trust.

111. A trustee is an agent of both the homeowner and the lender, and in this dual capacity, a trustee must act impartiality respecting the two competing interests.

112. As the trustee, Shapiro Brown & Alt and Professional Foreclosure Corporation had a fiduciary duty to Plaintiff, which required it to act in good faith and utilize discretion in the management of the trust that a prudent man of discretion and intelligence would in exercising his own affairs. Additionally, the trustee has the right to invoke the aid and direction of the court of equity in the execution of the trust.

113. Under the Deed of Trust, Defendants' obligations are subject to and governed by "Applicable Law".

114. Defendants repeatedly breached their fiduciary duty to Plaintiff, including but not limited to the following conduct:

  a. By threatening to foreclose on Plaintiff's home when he was proceeding through loss mitigation alternatives;

  b. By refusing to stay the foreclosure action despite its knowledge that Plaintiff was being evaluated for HAMP;

  c. By scheduling a foreclosure sale on Plaintiff's home while he was being evaluated for HAMP and other loss mitigation alternatives;

  d. By failing to postpone Plaintiff's foreclosure sale while he was being evaluated for HAMP and other loss mitigation alternatives;

  e. By failing to verify that Plaintiff was in default;

  f.  By conducting the foreclosure even though the preconditions to foreclosure had not been satisfied under the terms of the Note and Deed of Trust;

  g.  By failing to properly investigate the status of Plaintiff's loan prior to scheduling the foreclosure sale.

115. Plaintiff has been damaged due to Shapiro Brown & Alt and Professional Foreclosure Corporation's breaches of its fiduciary duty.

116. The foreclosure sale should be set aside as a result of the breach of fiduciary duty.

117. Plaintiff demands judgment against Shapiro Brown & Alt and Professional Foreclosure Corporation in his favor in an amount of compensatory damages not less than $250,000.00, punitive damages in an amount sufficient to punish Shapiro Brown & Alt and Professional Foreclosure Corporation and to prevent both from engaging in such conduct again but not less than $350,000.00, costs in this action and reasonable attorneys' fees, and such further legal and equitable relief as the Court deems appropriate.

### Count VI: Declaratory Judgment
### (All Defendants)

118. The foregoing allegations in the Complaint are herein incorporated by reference.

119. The dispute and controversy is a justiciable matter which is not speculative, and a resolution by this court will determine the rights and interests of the parties to the Property in issue as well as the legal effect, if any, of the purported foreclosure sale on the property.

120. All parties are or claim interest in this matter and a determination of the respective interests in the Property will determine which party has the right to enforce the instrument and avoid future litigation.

121. Pursuant to Va. Code Ann. §§ 8.01-184 and 8.01-191, there is an actual justiciable controversy, and a declaratory judgment is the appropriate mechanism for resolving the ownership interests of each of the parties hereto to the Property.

122. Plaintiff respectfully moves for entry of a declaratory judgment to determine the purported foreclosure sale was void, alternatively that it was voidable and that the purported Foreclosure Deed was void, alternatively voidable; that Plaintiff is entitled to appointment of a constructive trustee with instructions to convey title of the home to them, subject to the Deed of Trust; and such further legal and equitable relief as this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against the Defendants as requested herein, for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief as the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
INMER E. CAMPOS-CARRANZA,

*/s/ Susan M. Rotkis*
Leonard A. Bennett, VSB#37523
Susan M. Rotkis, VSB#40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
Telephone (757) 930-3660
Facsimile (757) 930-3662 Facsimile
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170

19

SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, Suite 200
Fairfax, VA 22030
Telephone 703.251.5400
Facsimile 703.591.9285
kkelly@siplfirm.com
aguzzo@siplfirm.com


Dale W. Pittman, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 Facsimile
dale@pittmanlawoffice.com

Matthew J. Erausquin, VSB #65434
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Rd, Suite 600
Alexandria, VA 22314
(703) 273-7770
(888) 892-3512 Facsimile
matt@clalegal.com

**Counsel for Plaintiffs**

20