**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

| | | |
|---|---|---|
| **INMER E. CAMPOS-CARRANZA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 4:12-cv-94** |
| | ) | |
| **FEDERAL HOME LOAN** | ) | |
| **MORTGAGE CORPORATION, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## SB&A AND PFC'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Shapiro, Brown & Alt, LLP ("SB&A") and Professional Foreclosure Corporation of Virginia ("PFC"), by counsel, hereby submit this memorandum in support of their motion to dismiss the Complaint filed by Plaintiff Inmer E. Campos-Carranza (the "Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6), and in support thereof, state as follows:

### Introduction and Background

SB&A is a law firm located in Virginia, which practices in the area of foreclosure law. Compl. at ¶ 7. SB&A's clients appoint PFC as trustee to conduct foreclosure sales. Compl. at ¶ 8. Although the majority of the claims against SB&A and PFC are brought under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq., ("FDCPA"), the complaint does not involve collection activities such as harassing phone calls or repeated demand for money. Rather, under the guise of the FDCPA, the present complaint takes issue with the statutory notices and procedures that SB&A afforded to Plaintiff, as provided for under Virginia law, prior to foreclosure.

The gravamen of the lawsuit is the allegation that GMAC Mortgage, LLC ("GMAC"),[1] was not the investor, noteholder, and beneficiary of the deed of trust.  Instead, Plaintiff asserts that Federal Home Loan Mortgage Corporation ("Freddie Mac") is the true owner of her loan. Compl. at ¶ 60.  Yet, Plaintiff admits that GMAC is her loan servicer, Compl. at ¶ 5, and further omits that she entered into a previous loan modification agreement with GMAC as her "Lender." See Exhibit 1.

Specifically, Plaintiff takes issue with communications that she received on in early 2012, including a January 23, 2012 letter that she asserts improperly identified GMAC as her creditor. Upon this premise, Plaintiff attacks GMAC's appointment of PFC as trustee under the deed of trust.  Plaintiff further claims that the January 23, 2012 letter falsely stated that she owed $243,947.72.  Compl. at ¶ 63.  Plaintiff does not identify a correct amount.  Plaintiff further disputes that her loan was properly accelerated, yet she concedes that she received sufficient notices to accelerate her loan pursuant to Virginia law.

Under Count I, Plaintiff asserts that the January 23, 2012 correspondence "fail[ed] to disclose the amount of the actual amount of the debt and the identity of the creditor[,]" which Plaintiff claims violates 15 U.S.C. §§ 1692g(a)(1) and 1692h(a)(2).  Compl. at ¶ 72.  Count II asserts that the SB&A "falsely stat[ed] the identity of the creditor to whom the debt was owed and the amount of the debt," which Plaintiff claims violates 15 U.S.C. § 1692e(2), e(5) and/or e(10).  Compl. at ¶ 75.  Count III asserts that GMAC had no authority to appoint Defendants as substitute trustee, and further that the loan had never been accelerated pursuant to the Deed of Trust, and therefore Defendants had no right to conduct the foreclosure sale or to transfer the property.  Compl. at ¶¶ 79-81.  From that faulty premise, Plaintiff claims that "Defendants"

---

[1] Upon information and belief, defendant GMAC has filed for bankruptcy protection.

violated 15 U.S.C. § 1692f(6), which prohibits non-judicial action to effect "dispossession or disablement of property." See id. Count VI asserts that SB&A and PFC breached a fiduciary duty because they allegedly sold the property at foreclosure despite the loan being under HAMP loss mitigation review, without verifying the mortgage default, and without the loan having been accelerated. Compl. at ¶ 114. For the reasons that follow, Plaintiff's claims must be dismissed.

## Standard of Review

A complaint must be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Although the Court must accept well-pled allegations in Plaintiff's Complaint as true, it is not required to accept conclusory factual allegations, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), and cannot assume that "the [plaintiff] can prove facts which [he or she] has not alleged." Orcilla v. Bank of Am., N.A., 2011 U.S. Dist. Lexis 46639, 4-5 (N.D. Cal. Apr. 25, 2011) (quoting Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983). Nor is the Court required to consider unsupported legal conclusions or legal conclusions disguised as factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009); Papasan v. Allain, 478 U.S. 265, 286 (1986); J.D. Associates LTD, 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Iqbal, 556 U.S. 662, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(citations omitted).  Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumptions that all the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  But "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should… be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  Id. at 558 (citation omitted).

<u>DISCUSSION</u>

**I.     GMAC is the holder, loan servicer, and beneficiary of the loan, and therefore, constitutes had the power to appoint trustees and prosecute the foreclosure.**

Plaintiff's first challenge rests upon the faulty premise that GMAC was not authorized to appoint and did not validly appoint PFC as the trustee.  Compl. at ¶¶ 72, 75, 80, and 114.  Although Plaintiff admits that GMAC is her loan servicer, Compl. at ¶ 12, she claims that PFC's appointment is invalid because it was executed by GMAC, who she speculates was "not the actual beneficiary of the deed of trust and/or Noteholder."  Compl. at ¶¶ 79-80.  Factually, the challenge to the appointment of the trustee (and the right of the trustee to foreclose) is belied by the recorded assignment from MERS to BAC, <u>see</u> <u>Exhibit 2</u>, attached hereto.  Further, to the extent that Plaintiff infers that only the owner of a loan could appoint trustees and foreclose, such contention is contradicted by Virginia law.

Substantively, Plaintiff's claims are insufficient to attack the foreclosure.  Virginia law provides that a foreclosure may be prosecuted by the beneficiary under the deed of trust, <u>see</u> Va. Code §55-59(9), which would include any nominee of the lender such as MERS, <u>Tapia v. United States Bank, N.A.</u>, 2010 U.S. Dist. LEXIS 62448, 19-20 (E.D. Va. June 22, 2010), the noteholder or its agent, <u>Horvath v. Bank of N.Y.</u>, 641 F.3d 617 (4th Cir. 2011), including loan servicer, <u>see</u> <u>Larota-Florez v. Goldman Sachs Mortgage Co.</u>, 719 F. Supp. 2d 636, 640-41 (E.D.

Va. 2010), aff'd per curium at Appeal No. 10-1523 (4th Cir July 28, 2011), or a non-holder in possession with rights of holder.  See Va. Code 8.3A-301(ii); Va. Code 8.3A-203(b).[2]

Indeed, Plaintiff confuses the distinction between an owner of a note or underlying debt, versus its holder.  Under the Commercial Code, a party entitled to enforce the note need not be the owner of the underlying debt.  The comments to the Commercial Code explain that: "[t]he right to enforce an instrument and ownership of the instrument are two different concepts. . . . Ownership rights in instruments may be determined by the principles of the law of property, independent of Title 3, which do not depend upon whether the instrument was transferred under Section 3-203."  Virginia Code, §8.3A-203, Official Comment 1.  Under Virginia Code §8.3A-301, the right to enforce a promissory note inures to its holder, not its owner.

Thus, in a foreclosure challenge under Virginia law, the United States Court of Appeals for the Fourth Circuit explained that "[n]egotiable instruments like mortgage notes that are endorsed in blank may be freely transferred. And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement. Whoever possesses an instrument endorsed in blank has full power to enforce it."  Horvath v. Bank of N.Y., N.A., 641 F.3d 617, 621 (4th Cir. 2011); see also Bolouri v. Bank of America, N.A. et al., No. 1:10-cv-00225-LO-TCB (E.D. Va. August 24, 2010) aff'd per curiam at Appeal No. 10-2069 (4th Cir August 11, 2011).

Likewise, in Rosales v. Countrywide Home Loans, Loudoun Co. Cir Ct. Case No. 54255 (2010), attached hereto as Exhibit 3, Judge Horne determined that a note endorsed in blank may

---

[2] Generally, the terms of industry standard promissory notes secured by residential real estate indicate that "[t]he lender or anyone who takes this Note by transfer and who is entitled to receive payment is called the 'noteholder,'" which would allow enforcement by a non-holder in possession with rights of a holder.  See Va. Code 8.3A-301(ii); Va. Code 8.3A-203(b).

be enforced by its possessor, whoever that may be.  Specifically, Judge Horne held that such a possessor who may only be a loan servicer has the right enforce the rights and remedies contained in the Note and the Deed of Trust that secures it, including the right to foreclose on the Property. See id. Although Rosales is an unreported case from the Circuit Court of Loudoun County, Mr. Rosales appealed.  The Supreme Court of Virginia denied his appeal, yet gave an unusual explanation for doing so, specifically noting its agreement with Judge Horne's analysis, explaining:

> Upon review of the record in this case and consideration of the argument submitted in support of and in opposition to the granting of an appeal, the Court is of the opinion there is no reversible error in the judgment complained of.  Accordingly, the Court refuses the petition for appeal.

See Pedro Rosales v. Countrywide Home Loans n/k/a/ Bank of America Mortgage, Supreme Ct. of Virginia Record No. 102289 (April 12, 2011) (emphasis added).

Virginia statutory law recognizes that the deed of trust secures repayment of the note. See Va. Code §55-59(1) ("The deed [of trust] shall be construed as given to secure the performance of each of the covenants entered into by the grantor as well as the payment of the primary obligation.").  Notably, Virginia Code §55-59(9) specifically authorizes either the beneficiary or noteholder, or holder of a majority interest in a note, to appoint a substitute trustee on the deed of trust securing such debt.

Specifically, that statute provides:

> The party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee or trustees for any reason and, regardless of whether such right and power is expressly granted in such deed of trust, by executing and acknowledging an instrument designating and appointing a substitute. When the instrument of appointment has been executed, the substitute trustee or trustees named therein shall be vested with

6

> all the powers, rights, authority and duties vested in the trustee or
> trustees in the original deed of trust. . . .
> .

Va. Code §55-59(9).

To the extent that Plaintiff suggests that the owner of the loan must initiate the foreclosure, rather than the noteholder or loan servicer, such distinction has been and must be rejected. Indeed, in <u>Rosales</u>, addressing Countrywide's right to foreclose as a loan servicer, the court found such authority both under contract and agency law:

> In addition to Countrywide's rights under the Uniform Commercial Code, it also has the authority under the Adjustable Rate Note and Deed of Trust to exercise the rights and remedies set forth therein. The Adjustable Rate Note states: "The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under the Note is called the 'Note Holder.'" Adjustable Rate Note ¶1. As stipulated, Countrywide possesses the Adjustable Rate Note. Moreover, Countrywide as loan servicer, has the right to collect (or receive) payments due under the Adjustable Rate Note and the Deed of Trust. <u>See</u>, Deed of Trust ¶20. Hence, Countrywide is the "Note Holder," "The Note Holder may enforce its rights under the [the Adjustable Rate Note]" against Plaintiff, including the rights and remedies contained in the Deed of Trust. Adjustable Rate Note ¶9. Indeed, the rights and remedies in the Deed of Trust protect the Note Holder from possible losses that occur if Plaintiff fails to make payments under the Adjustable Rate Note. Adjustable Rate Note ¶11. <u>Therefore, Countrywide, as the Note Holder, has the right to foreclose on the Property. Even if Countrywide was not the Note Holder, it is still authorized under the contract and agency law, to initiate foreclosure proceedings on the Property.</u>

<u>Id.</u> at *6-7 (emphasis added).

Likewise, this Court has also determined that loan servicers alone have the authority to foreclose on property that secured the loans that they service on behalf of the holder. <u>See</u> <u>Larota-Florez v. Goldman Sachs Mortgage Co.</u>, 719 F.Supp 2d 636, 640-41 (E.D. Va. 2010), aff'd per curium at Appeal No. 10-1523 (4th Cir. July 28, 2011) ("As servicer, Litton has the right to collect payments <u>on behalf of the holder</u> and the right to foreclose upon default. Therefore,

Litton's appointment of Professional as substitute trustee under the Deed of Trust was authorized as a matter of contract and agency law.") (emphasis added); cf. Sprint Communs. Co., L.P. v. APCC Servs., 554 U.S. 269, 271 (2008) ("assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor," and noting that "operators assigned their claims lock, stock, and barrel, and precedent makes clear that an assignee can sue based on his assignor's injuries.").

And the Deed of Trust itself confirms that the servicer has the right to collect payment. See Exhibit 4 (Deed of Trust). Specifically, Section 20 of the Deed of Trust provides that "[A] sale [of the Note] might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Agreement, and Applicable Law. . . . If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other that the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." Id. at p. 12, §20. Here, there is no allegation that the "owner" assumed any of the loan servicing obligations, and the mere sale of the Note does not affect the servicing of the loan, including the ability of the servicer to prosecute a foreclosure.[3]

---

[3] Indeed, the Commercial Code limits a borrower's ability to assert that a third-party has a claim to an instrument. Notably, Virginia Code §8.3A-305(c) provides:

> [I]n an action to enforce the obligation of a party to pay the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense, claim in recoupment, or claim to the instrument (§ 8.3A-306) of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the

Here, Plaintiff admits that GMAC is her loan servicer, Compl. at ¶ 5, and alleges no facts in her Complaint to support the notion that GMAC was not the holder of the note on October 25, 2011, when the Appointment of Substitute Trustee was executed.  Compl. at ¶ 69.  Moreover, Plaintiff does not dispute that GMAC is the record beneficiary under the Deed of Trust pursuant to the assignment of the Deed of Trust in its own name, see Ex. 1.  Rather, Plaintiff only simply alleges that Freddie Mac had purchased Plaintiff's loan, Compl. at ¶ 14, while at the same time admitting that Freddie Mac's own guidelines gave GMAC the authority to commence foreclosure proceedings under these circumstances.  Compl. at ¶ 17.  Thus, Plaintiff's challenge to the foreclosure based upon the appointment fails as a matter of law, and cannot form the basis for *any* viable claim brought against the Defendants in this case.

## II.     Plaintiff's claim that SB&A "falsely" identified GMAC as creditor is belied by its status as beneficiary, holder, loan servicer, and the terms of the deed of trust.

Plaintiff claims that, because Freddie Mac owned her loan, GMAC was incorrectly identified as her creditor on SB&A's January 23, 2012 letter.  Compl. at ¶ 6.  Thus, Plaintiff contends that SB&A's January 23, 2012 letter violated the FDCPA by falsely identifying the name of the creditor to whom the debt was owed.  Compl. at ¶¶ 72, 75.  Plaintiff's contention fails, however, because a loan servicer such as GMAC fits the definition of a "creditor" under the FDCPA.

A "creditor" under the FDCPA is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating

---

claim against the person entitled to enforce the instrument. . . .

Va. Code §8.3A-305(c); see also Va. Code §55-59.1(B).

collection of such debt for another."  15 U.S.C. § 1692a(4).  Notably, the FDCPA does not define creditor to be the owner of the loan.

Plaintiff has not alleged that her loan was in default when GMAC obtained its servicing rights.  Further, as discussed above, GMAC is the record beneficiary of the deed of trust, uncontroverted holder of the note, and the loan servicer.  In these roles, the relevant documents reflect that GMAC is the creditor to whom Plaintiff's debt is owed.  Indeed, the Deed of Trust recognizes GMAC's role as loan servicer is the "collect[] Periodic Payments due under the Note and this Security Instrument…."  Exhibit 4 at ¶ 20.  Further, under the subject Note, attached hereto as Exhibit 5, the borrower's promise to pay is to the Lender, and the Note further provides that "I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Noteholder'."  Exhibit 5.

Moreover, Plaintiff concedes in her Complaint that GMAC is the entity who "was responsible for collecting payments from Plaintiff…."  Compl. at ¶ 15.  The Complaint is otherwise rife with allegations of GMAC attempting to collect the debt from Plaintiff, and Plaintiff attempting to make payments on the debt directly to GMAC.  Compl. at ¶¶ 32-38.  Such allegations are consistent with federal law's description of GMAC's servicing responsibility, which include "receiving any scheduled periodic payments from a borrower pursuant to the terms of any mortgage loan… and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract."  12 USC § 3500.2(b); see also Larota-Florez, 719 F.Supp. 2d at 640-41, aff'd per curium at Appeal No. 10-1523 (4th Cir. July 28, 2011) ("As servicer, Litton

has the <u>right to collect payments</u> on behalf of the holder and the right to foreclose upon default.") (emphasis added); <u>CWCapital Asset Management, LLC v. Chicago Properties, LLC</u>, 610 F.3d 497, 500 (7th Cir. 2010) (explaining the necessary role of servicers: "[e]very mortgage needs someone to collect the borrower's monthly payments of principal and interest; make sure the property is properly insured; attend to any default, either by suing the borrower and if necessary foreclosing the mortgage or by modifying the mortgage to make its terms less onerous to the borrower; and discharge the mortgage when it is paid off[.]").

Thus, because GMAC is entitled to collect the debt as the loan servicer and note holder, it is properly designated as creditor. <u>See generally</u> <u>Gomez v. GMAC Mortg., LLC</u>, Nos. 10-13287, 10-13288, 10-13442, 2010 U.S. Dist. Lexis 140626, 2010 WL 5625673, at *3 (E.D. Mich. Dec. 15, 2010) (From the mortgage documents provided by GMAC, it is apparent that Amera was the mortgage originator, GMAC was the mortgage servicer, and MERS was the mortgagee, which means that these Defendants are creditors, not debt collectors."). Indeed, GMAC's status as record beneficiary, pursuant to the recorded assignment (and as holder of the promissory note), also establishes it as a proper creditor. <u>Id.</u>, <u>see also</u> <u>Lettenmaier v. Fed. Home Loan Mortg. Corp.</u>, 2011 U.S. Dist. Lexis 88277, 39-40 (D. Or. Aug. 8, 2011) ("In deeds of trust appointing MERS as a lender's nominee, "MERS becomes the mortgagee of record [and] is listed as the grantee in the official records maintained at county register of deeds offices." <u>Rinegard-Guirma v. Bank of Am. Nat. Ass'n</u>, No. CV-10-1065-PK, 2010 U.S. Dist. LEXIS 107619, 2010 WL 3945476, at *4 (D. Or. Oct. 6, 2010) (internal quotation omitted). <u>As mortgagee, MERS is essentially the creditor</u>.") (emphasis added); <u>Nicholson v. OneWest Bank</u>, 2010 U.S. Dist. LEXIS 45993, 9-12 (N.D. Ga. Apr. 20, 2010).

Thus, whether as holder, loan servicer who acquired its rights when the loan was not in default, or assignee under the recorded assignments, GMAC is the entity to whom the debt is owed, and as such, was properly identified as the creditor on SB&A's January 23, 2012 letter. Accordingly, SB&A and PFC cannot be liable for violations of the FDCPA on these grounds.

**III.     The January 23, 2012 letter did not misrepresent the amount of the debt.**

Plaintiff asserts that the January 23, 2012 letter misrepresented the amount of her debt, and thus violated the FDCPA.  Compl. at ¶¶ 65, 72, 75.  Specifically, Plaintiff asserts – with no factual support whatsoever – that, "Plaintiff did not owe that amount at on January 23, 2012." Id.  Although Plaintiff takes issue with the amount due, she offers no indication as to what she believes is owed, or why the amount indicated is allegedly falsely stated.

Thus, this is precisely the sort of pleading allegation that the United States Supreme Court addressed in Iqbal when it held that a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" Iqbal, 556 U.S. at 678.  Indeed, Plaintiff's allegation is a classic example of a naked assertion that is entirely devoid of any further factual allegation.  For this reason alone, Plaintiff's Compliant fails to state a cause of action for misrepresentation based on the January 23, 2012 letter.

And even if this allegation were sufficient (which it is not), the January 23, 2012 letter specifically notes that SB&A has been advised by its client that the amount of the debt is as stated.  Compl. at ¶ 63.  The United States Court of Appeals for the Fourth Circuit and the United States District Court for the Eastern District of Virginia have held that debt collectors are entitled to rely on the information provided to them by the client and that the FDCPA does not require debt collectors to conduct an independent investigation of such information.  Amond v. Brincefield, Hartnett & Assocs., P.C., 1999 U.S. App. Lexis 4815, *7-9 (4th Cir. Va. Mar. 22,

1999) (dismissing plaintiff's claim that the debt collector was not entitled to rely on the bank's statement of amount); <u>McLean v. Ray</u>, 2011 U.S. Dist. Lexis 53663, 17-18 (E.D. Va. May 18, 2011) (holding that the debt collector could rely on the creditor's representations regarding the debt). In <u>Amond</u>, plaintiff argued that the debt collector violated its duties under the FDCPA by failing to investigate the validity and amount of the debt. 1999 U.S. App. Lexis 4815 at *7. The court rejected plaintiff's argument and held that even the debt collector's status as an attorney does not add a requirement of independent analysis for each aspect of the creditor's claim. <u>Id</u>. at *8 (citing <u>Jenkins v. Heintz</u>, 124 F.3d 824, 833-34 (7th Cir. 1997)). Accordingly, the court dismissed plaintiff's FDCPA claim. <u>Id</u>. at *9.

Federal courts in other jurisdictions have consistently reached the same conclusion and dismissed plaintiffs' claims that the debt collector misrepresented the validity of the debt or its amount when the debt collector relied on the information provided to it by the creditor. <u>See</u>, <u>e.g.</u>, <u>Randolph v. IBMS, Inc.</u>, 368 F.3d 726 (7th Cir. 2004) (holding that "Courts do not impute to debt collectors other information that may be in creditors' files-for example, that debt has been paid or was bogus to start with"); <u>Slanina v. United Recovery Sys., LP</u>, Case No. 3:11-CV-1391, 2011 U.S. Dist. LEXIS 121356, *8 (M.D. Pa. Oct. 20, 2011) (dismissing plaintiff's FDCPA claim *not* because a bona fide error defense applied but because debt collector has not duty to verify debt validity before it initiates debt collection); <u>Hyman v. Tate</u>, 362 F.3d 965, 968 (7th Cir. 2004) (debt collector was not required to verify that the debt was not in bankruptcy but was entitled to rely on the creditor's representations instead); <u>Ducrest v. Alco Collections</u>, 931 F.Supp. 459, 462 (M.D.La.1996) ("[t]he FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt, nor does it require the debt collector to dispute the creditor's construction of a contract."); <u>see also</u> <u>Smith v.</u>

Transworld Sys., Inc., 953 F.2d 1025, 1032 (6th Cir. 1992) (statute does not require an independent investigation of the debt referred for collection; instead, the FDCPA requires the maintenance of procedures reasonably adapted to avoid any such error.).  Although creditors may possess additional information regarding the loan, the FDCPA does not automatically impute such knowledge to debt collectors.  See, e.g., Lynch v. Nelson Watson & Assocs., LLC, Case No. 10-cv-2025, 2011 U.S. Dist. LEXIS 66031 (D. Kan. June 21, 2011) (dismissing plaintiff's FDCPA claim because any knowledge that the creditor had regarding plaintiff's representation by an attorney could not be imputed to the defendant debt collector).  Accordingly, SB&A was entitled to rely on the information it received from its client and cannot be liable under the FDCPA for the amount stated in the January 23, 2012 letter.

Plaintiff's allegations simply do not support a plausible claim that SB&A misrepresented the amount due in the January 23, 2012, 2011 letter.  Moreover, as set forth above, even if the allegation were sufficient, SB&A was entitled to rely on its client in providing the figures.  The FDCPA does not require debt collectors to conduct an independent investigation of such information.  Amond, 1999 U.S. App. LEXIS 4815, *7-9; McLean, 2011 U.S. Dist. LEXIS 53663, at *17-18 (debt collector could rely on the creditor's representations regarding the debt).  Accordingly, Plaintiff's claims that Defendants misrepresented the amount of the debt must be dismissed.

IV.   **As a matter of law, Plaintiff's loan was properly accelerated prior to the foreclosure.**

Plaintiff contends that her loan had never been accelerated pursuant to the Deed of Trust, prior to the foreclosure sale.  Compl. at ¶ 81.  Plaintiff's claims fail however, because they are contradicted by her other allegations and by her exhibits.  Veney v. Wyche, 293 F.3d 726, 730

(4th Cir. 2002) ("Nor must we 'accept as true allegations that contradict matters properly subject to judicial review or by exhibit.").

Indeed, Plaintiff concedes that "on or around October 21, 2011, GMAC sent Plaintiff a notice of Default."  Compl. at ¶ 32, a copy of the subject notice is attached as <u>Exhibit 6</u>.  While Plaintiff takes issue with GMAC's calculation of the amount necessary to avoid acceleration, Plaintiff does not otherwise contend that the October 21, 2011 notice does not comply with the requirements for such a pre-acceleration notice set forth in the Note and Deed of Trust.  <u>See</u> <u>Exhibit 5</u> at ¶ 22 and <u>Exhibit 6</u> at ¶ 6.  Nowhere do either of these two governing documents require that the borrower agree with the amount demanded by the lender for the pre-acceleration notice to be effective.

Neither does Plaintiff contend that she ever actually tendered the funds necessary to prevent acceleration of the loan within the time-frame set forth by the October 21, 2011 notice, nor does she allege that she ever brought her loan current between the date that she received such notice and the date of the foreclosure sale.  Therefore, the October 21, 2011 notice acted as a valid pre-acceleration notice pursuant to Virginia law, and the condition precedent to GMAC's right of acceleration had been met.  <u>See</u> <u>Bayview Loan Servicing, LLC v. Janet Simmons</u>, 275 Va. 114 (2008).

Further, Plaintiff also concedes that she received notice of the foreclosure sale from SB&A within the time frame required by the Virginia Code.  Compl. at ¶ 68.  Plaintiff does not contend that SB&A's notice of sale was not in compliance with Va. Code § 55-59.1.  Under that statute, as a matter of law, SB&A's notice of sale was an effective pre-foreclosure sale exercise of GMAC's acceleration of Plaintiff's loan.  Specifically, section 55-59.1 provides that:

> The written notice of proposed sale when given as provided herein shall be deemed an effective exercise of any right of acceleration

> contained in such deed of trust or otherwise possessed by the party
> secured relative to the indebtedness secured.   The inadvertent
> failure to give notice as required by this subsection shall not
> impose liability on either the trustee or the secured party.

VA Code § 55-59.1(A).

Thus, all of the loan's acceleration requirements were met prior to the March 20, 2012 foreclosure sale.  As a result, Plaintiff's claims that her loan was not properly accelerated must be dismissed.

### V.   Plaintiff's fiduciary duty claim fails because the duties upon which her claim is based are not owed to her by Defendants as a matter of law.

Plaintiff contends that PFC (and SB&A as its alleged agent) breached its fiduciary duty by foreclosing despite the loan being under HAMP loss mitigation review, without verifying the mortgage default, and without the loan having been properly accelerated.  Compl. at ¶ 114.

To plead such tort, a plaintiff must plead the duty, the breach, and the loss caused by the breach.  See First Health Servc. Corp. v. Baruch Def. Mktg., Inc., No 15834, 1995 Va. Cir. Lexis 1440, at *4-5 (Loudoun 1995) (citing Carstensen v. Chrisland Corp, 247 Va. 433, 444 (1994)). Here, Plaintiff has not pled a viable breach of fiduciary duty claim, the duties that she refers to are not owed by PFC, because they are not enumerated in the subject deed of trust.

In Virginia, a trustee is "the agent of both debtor and creditor."  Powell v. Adams, 179 Va. 170, 174 (1942).  Accordingly, the trustee must act with fairness and impartiality towards both.  Id.  However, the trustee's status as the agent for debtor and creditor does not make the trustee a fiduciary of either party.  Horvath v. Bank of N.Y., N.A., 2010 U.S. Dist. Lexis 19965, *4-5 (E.D. Va. Jan. 29, 2010) (dismissing plaintiffs' claims for breach of fiduciary duties against the substitute trustee; holding the substitute trustee owes no such duties to the borrower); Carter v. Countrywide Home Loans, Inc., 2008 U.S. Dist. Lexis 67014, *29-31 (E.D. Va. Sept. 2, 2008)

(same); <u>Sheppard v. BAC Home Loans Servicing, LP</u>, 2012 U.S. Dist. Lexis 7654, *25-27 (W.D. Va. Jan. 24, 2012) (same); <u>Sincere v. BAC Home Loans Servicing, L.P.</u>, 2011 U.S. Dist. Lexis 149650 (W.D. Va. Dec. 30, 2011) (same).

In <u>Horvath</u>, as here, plaintiff alleged that the trustee breached its fiduciary duty owed to him by failing to perform "reasonable due diligence" before threatening, scheduling, and foreclosing on the property. <u>Id</u>. at *4. The Court rejected plaintiff's claim stating, "Under Virginia law… a trustee under a deed of trust has no such duty of diligence, and trustees only owe duties listed in the deed of trust." <u>Id</u>. at *4-5 (citing <u>Carter v. Countrywide Home Loans, Inc.</u>, 2008 U.S. Dist. Lexis 67014 (E.D. Va. Sept. 3, 2008)); <u>see also</u>, <u>Powell</u>, 179 Va. at 174 ("The powers and duties of a trustee in a deed of trust, given to secure the payment of a debt, <u>are limited and defined by the instrument under which he acts.</u>") (emphasis added).

Likewise, in <u>Carter</u>, the Court dismissed plaintiffs' claims predicated upon similar allegations to those advanced here, <u>i.e.</u>, that the substitute trustee failed to "provide accurate loan reinstatement and/or payoff amounts to the Plaintiffs," "by failing or refusing to keep the Plaintiffs fully informed as to the status of the foreclosure proceedings," and "by failing to communicate with them in a timely manner regarding the foreclosure proceedings. <u>Carter</u>, 2008 U.S. Dist. Lexis 67014, at *29. In rejecting Plaintiffs' allegations, the Court emphasized the established rule that the trustee owes no fiduciary duties to the borrower other than those listed in the deed of trust itself. Since the deed of trust did not set forth any of the alleged fiduciaries duties, plaintiffs' claims failed. <u>Id</u>. at *30.

More recently, in <u>Sheppard</u>, the Western District of Virginia determined that Mr. Sheppard had fraudulently joined PFC as a defendant on similar grounds, and thereby dismissed it from the lawsuit. 2012 U.S. Dist. Lexis 7654, at *31. Concerning the breach of fiduciary

duty count, the Sheppard court explained that PFC did not owe the borrower the duties alleged,

as they were not provided for by the instrument under which PFC was appointed, i.e., the subject

deed of trust, explaining:

> It is true that a trustee like PFC is "the agent of both debtor and creditor." Powell v. Adams, 179 Va. 170, 174, 18 S.E.2d 261, 263 (1942).  Accordingly, "[i]t is incumbent upon [the trustee] to act toward each with perfect fairness and impartiality."  Id.  Extrapolating from this duty of fairness and impartiality, Plaintiff argues that trustees are fiduciaries for both the debtor and creditor. In support this notion, Plaintiff cites Rohrer v. Strickland, 116 Va. 755, 759, 82 S.E. 711, 712 (1914) (citing Wilson v. Wall, 99 Va. 353, 353, 38 S.E. 181, 181 (1901)).  However, neither Rohrer nor Wilson mentions fiduciary duties.  Moreover, Plaintiff has cited no additional authority for his assertion that there is a common law fiduciary duty owed to borrowers by trustees.  In fact, under Virginia law, "'[t]he powers and duties of a trustee in a deed of trust, given to secure the payment of a debt, are limited and defined by the instrument under which he acts.'"  Warner v. Clementson, 254 Va. 356, 361, 492 S.E.2d 655, 657 (1997) (quoting Powell, 179 Va. At 174, 18 S.E.2d at 263); see also, Horvath v. Bank of New York, N.A., No. 1:09-cv-01129, 2010 U.S. Dist. LEXIS 19965, 2010 WL 538039, at *1 (E.D. Va. Jan. 29, 2010), aff'd, 641 F.3d 617 (4th Cir. 2011) ("Under Virginia law, however, a trustee under a deed of trust has no such duty of diligence, and trustees only owe duties listed in the deed of trust."); Carter v. Countrywide Homes Loans, Inc., No. 3:07CV651, 2008 U.S. Dist. LEXIS 67014, 2008 WL 4167931, at *11 (E.D. Va. Sept. 3, 2008) (dismissing claim for breach of fiduciary duty against trustee because plaintiffs' "claim fail[e]d to set forth any fiduciary duties arising pursuant to the deed of trust"); Preston v. Johnson, 105 Va. 238, 238, 53 S.E. 1, 1, (1906) (stating that it is well-settled that a trustee, in executing a trust, "must in all material particulars substantially conform to the stipulations of the deed"); Fleet Fin. v. Burke & Herbert Bank and Trust, 27 Va. Cir. 98, 1992 WL 884461, at *3 (Va. Cir. Ct. 1992) ("The Court finds on this issue that Virginia law does not impose fiduciary duties on trustees beyond those duties owed to the parties under the deed of trust.").

In the case at hand, the deed of trust spells out the powers and duties of the trustee with respect to the sale of the property following the initiation of foreclosure.  <u>There is no duty (labeled fiduciary or otherwise) found in the deed of trust requiring the trustee to ensure either that it was properly appointed or that the entity invoking the sale is the secured party with authority to foreclose.</u>  For these reasons, I find that Plaintiff could not prevail against PFC on Count II.

<u>Sheppard</u>, 2012 U.S. Dist. LEXIS 7654, at *25-27 (emphasis added).

<u>Horvath</u>, <u>Carter</u>, and <u>Sheppard</u> are dispositive of the issues here.  Plaintiff's allegations that PFC failed to act diligently to discover that the loan was under HAMP loss mitigation review and that the loan had not been properly accelerated, and also alleged failure to verify the mortgage default prior to foreclosure, do not state a claim for breach of fiduciary duties because none exist by virtue of the deed of trust, which does not impose such duties on the trustee.  <u>See Exhibit 4</u>.  Thus, consistent with <u>Sheppard</u> and the precedents cited therein, this Court should decline to impose fiduciary duties upon PFC non-existent in the Deed of Trust.  Accordingly, Count V should be dismissed with prejudice.

WHEREFORE, Shapiro, Brown & Alt, LLP and Professional Foreclosure Corporation of Virginia respectfully request that the Complaint be dismissed, that it be awarded its fees in the action, and for such other relief as may be just and proper.

### VI. Plaintiff has not alleged a sufficient claim for declaratory judgment (Count VI) – there is no actual antagonistic assertion and denial of right, and it is untimely.

In <u>Tapia</u>, the Court determined that "declaratory relief is inappropriate as the foreclosure has already occurred and because the Amended Complaint fails to set forth facts establishing plausible grounds for declaratory relief." <u>Tapia</u>, 2010 U.S. Dist. Lexis 62448 at *15.  Notably, the Court explained, "declaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation," and are untimely if the questionable conduct

19

has already occurred or damages have already accrued." Id. at *15-16 (citing Hipage Co. v. Access2Go, Inc., 589 F. Supp. 2d 602, 615 (E.D. Va. 2008)).  Accordingly, Plaintiff's declaratory judgment, which is similar to that in <u>Tapia</u>, should be dismissed as untimely, as the foreclosure sale has already occurred, and the complaint here fails to set forth facts establishing plausible grounds for declaratory relief.

Dated: July 11, 2012                    Respectfully Submitted,
                                        **SHAPIRO, BROWN & ALT, LLP and**
                                        **PROFESSIONAL FORECLOSURE**
                                        **CORPORATION OF VIRGINIA**
                                        *By Counsel*

                                        By: */s/ Bizhan Beiramee*_____
                                        Bizhan Beiramee, Esq. (VSB # 50918)
                                        Matthew Cohen, Esq. (VSB # 72097)
                                        Beiramee & Cohen, P.C.
                                        6663 B Old Dominion Drive
                                        Third Floor
                                        McLean, Virginia 22101
                                        Phone: (703) 483-9600
                                        Fax:    (703) 483-9599
                                        Email: bbeiramee@beiramee.com


                                        John C. Lynch (VSB No. 39267)
                                        Megan E. Burns (VSB No. 35883)
                                        Ethan G. Ostroff (VSB No. 71610)
                                        Counsel for Defendants
                                        TROUTMAN SANDERS LLP
                                        222 Central Park Avenue, Suite 2000
                                        Virginia Beach, Virginia 23462
                                        Telephone:  (757) 687-7765
                                        Facsimile:  (757) 687-1504
                                        E-mail: john.lynch@troutmansanders.com
                                        Email: megan.burns@troutmansanders.com
                                        Email: ethan.ostroff@troutmansanders.com

                                        *Counsel for Shapiro, Brown & Alt, LLP and*
                                        *Professional Foreclosure Corporation of Virginia*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of July, 2012, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing (NEF) to the following:

>Dale Wood Pittman, Esq.
>The Law Office of Dale W. Pittman, P.C.
>112-A W Tabb St
>Petersburg, VA 23803-3212
>(804) 861-6000
>Fax: (804) 861-3368
>Email: dale@pittmanlawoffice.com
>
>Kristi Cahoon Kelly, Esq.
>Anthony J. Guzzo, Esq.
>Surovell Isaacs Petersen & Levy PLC
>4010 University Drive, Suite 200
>Fairfax, VA 22030
>703-277-9774
>Fax: 703-591-9285
>Email: kkelly@siplfirm.com
>
>Leonard Anthony Bennett, Esq.
>Susan Mary Rotkis, Esq.
>Consumer Litigation Associates
>763 J Clyde Morris Boulevard, Suite 1A
>Newport News, VA 23601
>757-930-3660
>Fax: 757-930-3662
>Email: lenbennett@cox.net
>Email: srotkis@clalegal.com
>
>Matthew James Erausquin, , Esq.
>Consumer Litigation Associates PC (Alex)
>1800 Diagonal Road, Suite 600
>Alexandria, VA 22314
>703-273-6080
>Fax: 888-892-3512
>Email: matt@clalegal.com

By:   _/s/ Bizhan Beiramee_____
         Bizhan Beiramee

21